**BURNETT, Admr., Plaintiff v. ERIE RAILROAD CO., Defendant.**

In the District Court of the United States for the Northern District of Ohio Western Division.

Civil, 4994.   January 31, 1944.

Charles E. Drury, Van Wert, for plaintiff.

Hoke & Wright, Van Wert, Robert M. Weh, of Burgess, Fulton & Fullmer, Cleveland, for defendant.

## OPINION

By KLOEB, J.

THE COURT: Ladies and Gentlemen of the Jury; at the conclusion of the plaintiff's testimony in this case, which constituted all of plaintiff's evidence, the defense moved the court to direct the jury to return a verdict in its favor as a matter of law. The court deferred action on that motion because he desired to hear the defense of the case on one point in particular, and that was the question of whether or not the railroad crossing was of such a nature as to require the railroad company to sound its whistle and ring its bell. At the conclusion of the defense, the motion was renewed, asking the court to direct a verdict.

The court feels that he must now sustain that motion.

The court desires to review briefly the law applicable to the case so that the jury may understand the rights of the parties here, and especially the law which prompts the court to act affirmatively on that motion.

It appears that on March 30 of last year, Mrs. Burnett was driving north on this lane on their farm approaching the double track crossing of the Erie Railroad Company. It appears from the testimony of her husband, who is acting as administrator and bringing suit for the alleged wrongful death of Mrs. Burnett, that she stopped her Chevrolet automobile, which was hauling an empty trailer, some feet south of where the raise begins that approaches the tracks. It appears then that she proceeded over the south tracks, which are referred to in the case as the eastbound tracks, and moved on, without stopping, to the westbound tracks, that is, the north tracks; and there for an instant, according to his testimony, the automobile paused and the left door opened; quite evidently an attempt upon her part, on seeing the engine upon her, to step out the left door and avoid the impending collision. At that instant the collision occurred.

The administrator plaintiff, Mr. Burnett, testified that at that time he was driving a tractor in a soy bean field, and that he was approximately 50 rods or thereabouts to the north and perhaps to the east of the crossing. Fifty rods are probably about 830 feet—so that he must have been 830 feet, or somewhat farther than two city blocks, away from the point of the collision. He could see that crossing clearly. The embankment was not so high. I think the general testimony is, including his own, it is probably a four-foot rise from the level of the ground up to this right of way. Anyhow from a distance of 800 feet, or approximately so, from this point of collision, he could see the crossing clearly. He could see his wife's car on the other side of this embankment, stopped. He could see it then start up and proceed at a speed of four or five miles an hour upon and over this right of way and into the very path of the engine that struck the car. There were no obstructions ap-

parently that prevented him from seeing this whole affair, and he was more than two city blocks away.

As to the law that applies to the matter, we have §8853 GC, which reads as follows:

"Every company shall attach to each locomotive engine passing upon its road, a bell of ordinary size in use on such engines, and a steam whiste. When an engine in motion and approaching a turnpike, highway or town road crossing **"or private crossing where the view of such crossing is obstructed by embankment, trees, curve or other obstruction to view, upon the same line therewith,"** and in like manner where the road crosses any other traveled place, by bridge or otherwise, the engineer or person in charge thereof, shall sound such whistle at a distance of at least eighty and not further than one hundred rods from such crossing, and ring such bell continuously until the engine passes the crossing."

That means that at a distance of probably thirteen to sixteen hundred feet from a recognized crossing, the engineer must sound his whistle and ring his bell.

The evidence in this case is that there were two crossings, the Gilbert Crossing about one thousand feet to the east of this Burnett Farm crossing, and then about one thousand feet to the east of that there was what is known as the 119 Crossing. I presume that gets its name from the fact that Route 119 crosses the railroad at that point. So within two thousand feet from the country lane there were two recognized highway crossings.

An engine approaching 119 from the east and going west would be required to sound its whistle from thirteen to sixteen hundred feet east of 119. We have all heard the long whistle of a train at these crossings, the two longs, the short and the long, as they approach these country highways: a whistle that ordinarily, I think by calculation, takes from thirteen to fifteen seconds to sound; and with a train approaching at sixty or sixty-five miles an hour, it covers a great deal of distance while the two longs, the short and the long, are being sounded.

The engineer says that he sounded his whistle for each of the 119 Crossings at what was known as the whistling post. I think you have gathered from this case that at the required distance, by statute from thirteen to sixteen hundred feet from the crossing, the engineer sees, or is supposed to know, that there is there affixed by the railroad what is known as a whistling post. That puts him on his guard if he does not know the territory. He must then sound his whistle because there is between thirteen and sixteen hundred feet distant a recognized highway crossing. He may have started that whistle thirteen to sixteen hundred feet east of 119 and so

sounded it as that the last blast occurred as it went over 119, which would be a sufficient sounding of the whistle for the Gilbert Crossing, within one thousand feet on to the west. Anyhow the engineer approached; and as he came down there the court was interested in knowing whether he was legally bound to sound a whistle for the country lane.

The court has concluded that there was no such crossing at this country lane as would bring it within the statute and require the engineer again to sound his whistle, because here was the plaintiff himself, the administrator now, two city blocks or more north and west of the point of contact, and he clearly could see to his left and see this passenger train coming from the 119 and the Gilbert crossings; he could look a little to his front and right and he could observe every move of his wife as she approached and went on to the Burnett country lane crossing; all of that indicating that it was not such a concealed country lane crossing as would bring it within the statute. There was no such obstruction by embankment, trees, curve or other obstruction to view, such as would put an affirmative duty upon the railroad to blast its whistle every time it approached this country lane.

That is the situation so far as the plaintiff's own testimony is concerned.

Now what is the law governing the rights and duties of the parties at a railway crossing? I want to cover several points so that you may understand. A steam or interurban railroad has a right to run its trains and cars on its private right of way, in the open country, at any speed consistent with the safety which is necessary in the conduct of its business; the safety of passengers and property being the paramount consideration by those in charge. That is the decision in one of the old cases that first broadly set out our railroad law here in Ohio: **Railroad Company v. Kistler, 66 Oh St 326,** which is a bellwether to those interested in railroad law as setting forth generally the first broad principles that cover the conduct of individuals and of a railroad at a railroad crossing. The general assembly has the power to restrict the speed of trains. As it has failed to exercise that power, then this failure warrants railroads in running their trains in the open country at such rate of speed as those in charge may deem safe.

You may now say, "Well, a railroad runs its trains at sixty, seventy, eighty, miles an hour through the open country. It ought to slow up when it comes to crossings". But if a railroad had to accommodate itself in the running of its trains to every country crossing that it comes to, it would never arrive at its destination within a reasonable time. So there must be some rule governing the conduct of railroads in the operation of their trains. Our legislature has not seen fit to restrict the speed of railroad trains in the open country, and therefore the courts cannot act as a legislature and make some laws that may govern.

Counsel for the plaintiff of course might have in mind, as the court does, the Stegaman case, 22 Fed. 2nd. 69, which is important in the 6th Federal Circuit, that occurred down in Van Wert county some years ago, when a school bus approached a railroad crossing on a country highway and was struck by a Pennsylvania Railroad train. Some twenty-two children, I believe, were killed or injured. That case set some federal law upon the question. But included in that law was an adherence to the principle that a railroad company has a right to and is not negligent when it operates its trains at any speed it deems advisable in the open country

So much for the speed of a train.

I am arriving now at the question of the general law that would govern a court in a matter of this kind. A railroad company might be negligent in the operation of its train as it approached a crossing; yet, if the person who was injured or killed was negligent and his negligence contributes directly and proximately to his or her own injury or death, then he or she cannot recover; nor can the the administrator for the deceased person recover. In other words if I am negligent as I approach a railroad crossing, and my negligence contributes directly and proximately to my own injury or death, I have no right to recover from a railroad company, even though the railroad company itself may have been negligent in the operation of its train.

What is the duty of a traveler approaching a railroad crossing? It is the duty of the driver of a vehicle upon a public highway when approaching a crossing to both look and listen for approaching trains, and to do so at such time and place and in such manner as will make the looking and listening effective.

There are a number of cases in Ohio, some very recent cases of our Supreme Court; and those are the decisions that must goven this court in connection with a railroad collision in the state of Ohio. It is the law of Ohio that governs now, and this court is bound by the decisions of the Supreme Court of Ohio.

For instance there are the cases of **Pennsylvana Railroad Company v. Rusynik, in 117 Oh St, at page 530; The Detroit, Toledo & Ironton Railroad Company v. Rohrs, 114 Oh St 493,** a very excellent opinion by Judge Kinkade; **Baltimore & Ohio Railroad Company v. Heck, 117 Oh St 147; Moulten v. Pennsylvania Railroad Company, 26 Abs 363;** and **Lang v. Pa. Ry., 59 Oh Ap 345.**

The looking required before going upon a crossing should usually be just before going upon the tracks, or so near thereto as to enable the person to get across before the train within the range of his view of the track, going at the usual rate of speed of fast trains or interurban cars, would have reached such crossing

There is a very excellent case: *Lang v. Pennsylvania Railroad Company,* in 59 Oh Ap 345, a rather recent decision by Judge Guern-

sey of the Third Court of Appeals of Ohio, for Allen county, sitting at Lima: which was just adjacent to Spencerville, where this accident occurred. In the Lang case the collision occurred in the municipality of Delphos, Ohio. The opinion gives a thorough review of recent decisions of the Ohio Supreme Court and other courts in Ohio on the rights and duties of the parties at a crossing.

It is the duty of a traveler to exercise reasonable care to discover an approaching train until such traveler is over the crossing and the danger has passed. If such traveler makes no further effort to ascertain that a train is approaching than to stop and look when sixty feet from the main track, he is guilty of negligence contributing to his injuries and cannot recover. That is the case of **Woolley v. The Cincinnati, Hamilton & Dayton Railway Company, 90 Oh St 387.**

Omission of the operator of a vehicle or automobile to exercise vigilance in looking and listening for an approaching train, without a reasonable excuse therefor, is negligence, and will defeat an action by such person for injury if such negligence directly contributed to his injury or damage. If the view of the operator of an automobile who is familiar with the surroundings of a crossing is obstructed, he must stop and look, if necessary, and, if necessary, leave the vehicle to see if the way is clear, to make sure that the crossing is safe. Failure to do so is negligence as a matter of law, preventing recovery. That is the decision of the Goodman case, 275 U. S. P. 66, which is a United States Supreme Court decision of several years ago. The duty of getting out of the vehicle is not necessarily a duty imposed by the Courts of Ohio.

I want to read to you several of these decisions, so that you may know what the court is arriving at.

I mentioned the Kistler case. Let us see in general what that court said back in 1902. This was the Supreme Court of Ohio, laying down some fundamental law in Ohio:

"In the absence of a statute regulating the rate of speed of railroad trains, it is not negligence for a railroad company to run its trains, in the open country, at such rate of speed as those in charge of the same may deem safe to the transportation of passengers and property, unless there are facts and circumstances which, when taken in connection with a high rate of speed, would make such speed an element or factor in constituting negligence, and in such cases such facts and circumstances should be pleaded.

"As between a person about to cross over a railroad at a crossing, and a train of cars approaching such crossing, the train has the right of way."—"This is so because the person can stop within a few feet, and the train cannot."

That was quite apparent in this case where with the train coming sixty to sixty-five miles an hour down that track in the open country, it was impossible of course for the engineer to have

stopped that train unless he could have seen an obstruction one thousand or two thousand feet ahead.

And what would be his duty then?:

"It is the duty of a locomotive engineer to keep a lookout on the track ahead of the train. If while so doing his eye takes in a person approaching the track, he may assume that such person will keep away from the track until the train passes;"—

In other words he cannot be expected to be at the throttle and put his brakes on every time he sees an automobile approaching a crossing one thousand or two thousand feet ahead of him. It is the duty of the driver to keep clear of the track; not for the engineer to suppose that perhaps that fellow might drive in front of him. The engineer has the right of way, and he may assume that such person will keep away from the tracks until the train passes.

I have not mentioned the case of **Cleveland, Cincinnati, Chicago & St. Louis Railway Company v. Lee, 111 Oh St 391**; paragraph two of the syllabus reads:

"In an action involving the negligence of the defendant and contributory negligence of the plaintiff when, giving to every portion of the plaintiff's evidence the most favorable interpretation in favor of the absence of negligence on his part, such evidence under such interpretation is susceptible of no other reasonable inference than that of negligence on his part, directly contributing to his injury, the question of contributory negligence ceases to be a question of fact for the determination of the jury, but, for the purposes of the case, becomes an uncontroverted fact for a declaration by the court of the law applicable thereto. It is the duty of the court in such case to direct a verdict."

That the court believes to be the situation here.

In **114 Oh St**, we find the **Rohrs Case, at page 493**:

"It is the duty of a driver of a vehicle upon a public highway when approaching a grade crossing of a steam railroad to both look and listen for approaching trains and to do so at such time and place and in such manner as will make the looking and listening effective.

"A driver of a vehicle upon a highway cannot recover damages for an injury received in a collision at a steam railroad crossing, even though he testifies that he looked and listened and neither saw nor heard anything approaching on the railroad track before going upon the crossing, when the only conclusion that can reasonably be reached upon the evidence is that there is no doubt that had he looked he must have seen the danger, that was immediately at hand, in time to avoid injury."

That, it appears to the court, was the situation here.

One of the witnesses—I don't recall which one it was, but I think it was one of the neighbors who was in the corn field to the south and west—said that the car drove upon the track, I think he said at a speed—one of them put it at fifteen or twenty miles an hour, but generally it was four or five miles an hour—that when the car got directly into the path of the train, the left door seemed to open; then the crash occurred. He said there was a freight train coming from the left, and it was whistling or had whistled for a crossing. Anyhow that freight train was coming, and apparently Mrs. Burnett had looked to her left and had seen the freight train approaching, and, in an effort to avoid that freight train, had crossed that track and had moved on, apparently without looking to her right. From the testimony of the plaintiff himself, she never saw that train approaching from the right until the engine impended directly upon her, when she saw it for an instant, giving her time enough only to shove open the left door; and the crash occurred. She drove directly into the path of the approaching train.

In **117 Oh St 530**, which is the **Rusynik Case**, which the court has referred to:

"When a traveler upon a public highway approaches a steam railway which intersects at grade the highway, with one or more tracks, with an intention of crossing over, it is the duty of such traveler, before going upon the railway, to look both ways and listen for the approach of trains; and such looking and listening must be at such time and place and in such manner as will be effective to accomplish the ends designed thereby."

You cannot look and listen one hundred or two hundred feet back, but you must look and listen when the looking and listening will be most effective. The court cannot conceive, at two-thirty or three-thirty in the afternoon, a clear day, a person approaching this crossing and driving directly into the path of this train, unless she had failed to look and listen when the looking and listening would have been most effective.

"A person driving a motor car upon a public highway and about to go upon a double track railroad crossing who stops and looks in one direction where his view is obscured by a passing freight train and the smoke therefrom, and looking in the opposite direction sees nothing, relying only for his safety upon not hearing an approaching train coming from an opposite direction to that of the passing freight train, or any signal of such approaching train, and taking no further precaution, proceeds at his own risk. If his failure to look in the direction from which a train is approaching, at a time and place when such looking would have been effective, results in an injury to himself when the same might have been avoided had he so looked, such conduct constitutes contributory negligence as a

matter of law that will prevent a recovery, even though the evidence tends to show there was a failure to give the signals required by law of such approaching train."

That, it seems to the court, was the situation here.

In the case of **Patton v. Pennsylvania Railroad Company, 136 Oh St 159**, there is quite a resume of decisions, including those which the court has already referred to. That court comments upon the Rusynik case, the Rohrs case and others, and comes to the same conclusion. It is an opinion by Judge Hart of the Ohio Supreme Court, announced December 20, 1939.

There are other decisions, in **24 Oh St 670**, and **28 Oh St 340**, which laid down some fundamental principles back a great many years before the Kistler case. There is the case of **Bellefontaine Railway Company v. Snyder, 24 Oh St 670**:

"It is the duty of a person approaching, crossing, or standing upon a railroad track, where cars are being run, to look out for approaching cars, and if he fails to do so, he is prima facie guilty of such negligence as will prevent his recovery for injuries occasioned to him, while so crossing or standing upon the track, by the mere carelessness, negligence, or unskillfulness of the employees of the company, not amounting to wilfulness on their part; and this presumption of negligence can only be rebutted by facts or circumstances showing that it was not reasonably practicable to make or keep such a lookout, or such as would ordinarily induce persons of common prudence to omit that precaution."

The court of course in this case must not overlook the fact that according to the plaintiff's own testimony, the deceased had lived on this farm for a number of years, since her marriage to the plaintiff administrator. I think she had lived there at least four years or more. She had been over that crossing down that lane at different times. In fact she had crossed over it within the hour, going from the north to the south, delivering a load of beans. It was a familiar crossing to her. Any defects that it may have had were familiar to her.

Something is sought to be made of the fact that the crossing was rough. It does not appear, from the plaintiff's own testimony, as well as the testimony of other witnesses, that this roughness, assuming it to have been rough, was the proximate cause of the death of the deceased, because her car went directly across the highway into the approaching engine.

There are two cases that the court has always looked upon with considerable deference. They are comparatively recent cases. One is **Pennsylvania Railroad Company v. Moses, 125 Oh St 621**, an opinion by Judge Kinkade. That collision occurred at Greenville, Ohio, and within the municipality. It seems that Moses and his wife

approached the crossing driving north and the train was going east—in the opposite direction from the case we have heard. Moses claimed he looked on both sides as he came upon the crossing. His wife said something to the effect that the track was clear, to go ahead. He went ahead and drove right into the path of the engine, and his car was smashed. Fortunately neither were killed, but there were personal injuries. Judge Kincade in that case said this, at page 627:

"The positive testimony of Moses that he was not south of the track when he discovered the engine, but was on the main track, and that the engine was only 40 feet away from him when he first discovered its approach, completely negatives his other statements, that he looked in both directions at the side track and as he was going onto the main track.. When there is evidence in the record, not disputed, which establishes that the injured party was guilty of negligence proximately contributing to his injury as a matter of law, it then became the duty of the trial court to withdraw the case from the jury and to direct a verdict for the defendant;" * * *

That was the situation in the Moses case . He said he looked both ways. He lived to tell that story. But the fact of the matter was the Supreme Court said that when he got on the tracks he was confused; that he did not see the engine until it was forty feet away.

The engine in this case may not have been more than forty feet away—probably was not—when this unfortunate woman looked to her right and saw it, made a momentary effort to open the left door; then the crash came.

That court said that was negligence; that the trial court was in error and should be reversed if it did not thereupon direct the jury to return a verdict.

There is another case that the court generally has in mind in these matters: **Lang v. Pennsylvania Railroad,** heretofore referred to. The collision occurred at a crossing in Delphos, within the municipality, where the municipality had an ordinance that required a reduced speed of the train. The train failed to observe that ordinance, and went at a great rate of speed,—sixty or sixty-five miles an hour: yet the court would not permit the case to go to the jury because the plaintiff himself was guilty of negligence in approaching and going upon that track, apparently without looking or listening at the proper point. The court said:

"The evidence in the case at bar shows that the decedent stopped his truck, consisting of a tractor and trailer, thirty-seven feet in length, at a point twenty feet north of the north track of the crossing; that, from this point all the way to the tracks over the

crossing, he had a clear and unobstructed view of two thousand feet in the direction from which defendant's train was approaching;"— in the case we have here, I do not think it could be disputed from the evidence that when one got onto the railroad right of way, at least when one approached and came onto the south track. looking. at it from the most favorable point of view, the plaintiff's own testimony, there was a clear view down those tracks to the elevator, a distance of two thousand feet—"that from this point he proceeded directly, without stop or interruption, to drive his truck upon the tracks of the defendant over the crossing, directly in front of the train of the defendant approaching from the east; and that he was operating his truck at a speed of not more than three miles an hour and could stop the same within two feet."—Well, that was about the situation here, where the deceased was driving her automobile at about four miles an hour.

"Under this evidence, if the decedent had looked and listened for the approach of the train at a point four feet north of the north track of the crossing, being the last time and place where he could have stopped the truck which he was driving and avoided a collision between it and the train being operated thereon by the defendant, he could have stopped his truck within a distance of two feet and avoided the collision with the train. As the train struck the truck immediately after it was driven on the track, it was necessarily so close to the crossing, at the time the truck driven by decedent came to the point four feet north of the tracks, that, had he looked and listened at this point, he could not have failed to observe the approaching train and take cognizance of the fact that it was exceeding the speed limit provided by the ordinance and that it would be impossible for him to drive his thirty-seven-foot truck across the track without colliding with the train. It is therefore clear that the decedent either failed to look and listen for the approach of the train at the point mentioned, or, if he looked and listened, failed to exercise any care for his own safety and that his failure so to do directly and proximately contributed to the injuries sustained by him which resulted in his death. Irrespective of the speed ordinance of the city of Delphos, plaintiff's decedent, under the evidence, was guilty of negligence directly and proximately contributing to his injuries, which precludes plaintiff from any recovery herein. The court therefore did not err in directing a verdict in favor of the defendant at the close of all the evidence."

The court was strengthened, as he listened to the defense of this case, in his conclusion from the testimony of the administrator himself in the plaintiff's case, that this was a clear and unobstructed country lane crossing; that the view was clear. Why do I say so? The plaintiff himself, as I have already said, more than two city blocks to the north and east of the point of contact, saw the train

approaching; saw the automobile clearly, and every move it made, until the point of collision.

There were three neighbors to the south and west from this point of collision, looking in the same general direction as Mrs. Burnett was required to have looked as she approached this crossing. These three neighbors were in a corn field. They say they were eighty rods, which was at least thirteen hundred feet, or probably three city blocks, to the south and west of the point of contact. They clearly saw the approaching train from the Gilbert Crossing. They saw the approaching automobile as it went upon and over the railroad tracks and into the path of the approaching engine.

Then there were two men, laborers on the railroad, at least one-third of a mile, almost two thousand feet, down the tracks to the east. They saw this automobile come up to this crossing. They saw the train approaching. They saw the crash.

So there were clear views of two thousand feet on down this track by persons from different angles. There was no obstruction to view.

The court can come to but one conclusion here, it is his duty to direct this jury to return a verdict on the ground that the deceased contributed directly and proximately to her own injury and death.

The clerk may present a verdict to No. 1 Juror, who may sign on the line indicated.